Robert A. BROWN; Glenbrook Capital LP; George P. Drake; CN & L Investment Corp.; and Andrew Kaufman, Plaintiffs,

v.

KINROSS GOLD, U.S.A.; Kinam Gold, Inc.; Kinross Gold Corporation; and Robert M. Buchan, Defendants.

No. CVS020605PMPRJJ.

United States District Court, D. Nevada.

Nov. 4, 2004.

Thomas F. Kummer, Esq., L. Joe Coppedge, Esq., Kummer Kaempfer Bonner & Renshaw, Las Vegas, Merrill G. Davidoff, Esq., Michael Dell'Angelo, Esq., Berger & Montague, P.C., Philadelphia, PA, Reginald H. Howe, Esq., Belmont, MA, for Plaintiffs.

Kirk B. Lenhard, Esq., Jones Vargas, Las Vegas, NV, Robert S. Clark, Esq., Parr Waddoups Brown Gee & Loveless, Salt Lake City, UT, for Defendants.

*ORDER*

PRO, Chief Judge.

Presently before this Court is Defendant Kinross Gold U.S.A., Inc. ("Kinross USA"), Kinam Gold, Inc. ("Kinam"), Kinross Gold Corporation ("Kinross Canada"), and Robert M. Buchan's ("Buchan") (collectively, "Defendants") Motion for Judgment on the Pleadings (Doc. # 76), filed on March 5, 2004. Plaintiffs Robert A. Brown, Glenbrook Capital LP, George P. Drake, CN & L Investment Corporation and Andrew Kaufman (collectively, "Plaintiffs") filed Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings (Doc. # 79) on May 4, 2004. Defendants filed their Reply Memorandum in Support of Defendants' Motion for Judgment on the Pleadings (Doc. # 81) on June 14, 2004. Plaintiffs filed Plaintiffs' Notice of Supplemental Authority in Further Support of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings (Doc. # 82) on September 15, 2004.

## I. BACKGROUND

In August 1994, Amax Gold ("Amax"), Kinam's predecessor, issued 1,840,000 shares of $3.75 Series B Convertible Preferred Stock ("Preferred") to the public. (Am. Class Action Compl. ¶ 24.) Amax issued the Preferred to raise necessary funds to continue the development of its "Fort Knox" gold mine in Alaska. (*Id.*) Shortly thereafter, the Preferred was listed on the New York Stock Exchange until August 2001, when its listing was transferred to the American Stock Exchange. (*Id.* ¶ 29.) On June 1, 1998, Kinross Canada acquired Amax. (*Id.* ¶ 37.) Amax then changed its name to Kinam and became a subsidiary of Kinross USA. (*Id.*) The Preferred, constituting three percent of Kinam's voting control, remained in the hands of third parties while Kinross USA owned all of the Kinam common stock. (*Id.* ¶ 40.) During the acquisition, Kinross Canada, through Kinross USA, advanced $256 million to Kinam, then recorded the $256 million as debt owed to Kinross USA, all of which was reported on Kinam's audited financial statements filed with the SEC. (*Id.* ¶ 42.) Kinross USA has carried the loan without charging interest or loan fees to Kinam. (*Id.*) The Fort Knox mines, developed with the issuance of the Preferred, provided Kinross with 40% of its gold production and 50% of its gold reserves. In total, the former Amax assets provided Kinross with approximately 75% of both its total annual gold productions and its total gold reserves. (*Id.* ¶ 84.)

After Kinross acquired Amax, the value of gold decreased, adversely affecting the Kinross organization. (*Id.* ¶ 46.) A Kinross press release attributed its losses to many factors, one of which was that the spot price of gold dropped significantly. (*Id.*) Defendants responded by suspending the quarterly dividends of the Preferred. (*Id.*) In November 2001, with six payments

of dividends being in arrears, the Preferred would have become eligible to elect two additional directors to Kinam's Board of Directors. (*Id.* ¶ 47.)

In May 2001, Kinross moved Kinam's state of incorporation from Delaware to Nevada. (*Id.* ¶ 48.) This move prevented holders of the Preferred from bringing a petition to put Kinam into state insolvency proceedings. (*Id.* at ¶ 50.) Insolvency would allow holders of the Preferred to apply for the appointment of a receiver. (*Id.* at ¶ 48.)

On June 12, 2001, Defendants and Franklin Templeton Variable Insurance Products Trust announced an agreement to exchange 800,000 shares of Preferred for 21.5 million common shares of Kinross USA. (*Id.* ¶ 56.) In the five days preceding the Franklin transaction, the average closing price of the Preferred was $8.025. (*Id.*) By the time of closing, however, the price of Kinross Canada stock had increased to an average price of $25.80 per share of Preferred. (*Id.*) On June 18, 2001, Kinross USA and Kinam announced agreements with two other holders of the Preferred to exchange over 2.6 million shares of Kinross' common stock for 145,-000 shares of the Preferred. (*Id.* ¶ 57.) The two other main shareholders exchanged their Preferred at a ratio that implied an effective price of $18.29 per share. (*Id.*) After these deals, Kinross USA owned 51.4% of the Preferred, thereby controlling 98.7% of the outstanding Kinam common and Preferred votes. (*Id.* ¶ 58.)

In February 2002, Kinross USA issued a Tender Offer to purchase all Preferred shares at $16.00 per share. (*Id.* ¶ 63.) Kinross USA made this offer after it made a bid to acquire 954,000 Preferred shares, held mostly by the Franklin Funds. (*Id.* ¶ 56.) The Tender Offer disclosed that Kinam suspended the payment of dividends on the Preferred, and did not plan to resume payments in the near future based on the then-current price of gold. (*Id.* ¶ 46.) The Tender Offer also discussed the fairness of the offer, stating that the Kinam Board had appointed a special committee to determine whether the $16.00 offer was fair to non-affiliated holders of Preferred shares. (*Id.* ¶ 62.) This committee consisted of directors of Kinross Canada who held equity positions. (*Id.*) The committee did not recommend whether the Preferred shareholders should accept the offer. (*Id.* ¶ 70.) Instead, the committee employed the firm of Raymond James, who had experience in the valuation of businesses and securities, to provide a fairness opinion. (*Id.* ¶ 62.)

In its review, Raymond James analyzed and reviewed the following: (1) Kinam's net asset value (determined to be between negative $73 million and negative $116 million); (2) Kinross Canada's and Kinam's financial statements from 1997 through 2003; (3) life of mine analysis, stock trading activity and prices, investment bank reports of the industry, and other similar tender offers; (4) discussions with Kinam's auditors and legal advisors; and (5) other "going-private" and "recent merger and acquisition transactions in the mining industry." (*Id.* ¶ 98.) Raymond James did not analyze a liquidation strategy because, according to Raymond James, the liabilities clearly outweighed the assets. (*Id.*) Based on Preferred's trading history, Raymond James concluded that an offer between $15 and $18 per share would represent a premium of between 68% and 101% over the 365–day average price. (*Id.* ¶ 74.) Raymond James concluded that the Tender Offer price was fair and within the range of values it had provided in its report. (*Id.* ¶ 70.)

At the conclusion of the Tender Offer period, Kinam Preferred shareholders ten-

dered 652,992 shares or 73% of the outstanding 894,600 Preferred shares not previously owned by Kinross USA. (*Id.* ¶ 78.) Plaintiffs held interests in approximately 56,100 Preferred shares. (*Id.* ¶¶ 5–9.) Plaintiffs did not tender these shares. (*Id.*)

Several Preferred shareholders began the action in this Court on April 26, 2002, alleging Defendants knowingly misrepresented that their Tender Offer was fair, in violation of Section 10(b) of the Securities Exchange Act. Plaintiffs also alleged Defendants knowingly employed a scheme to defraud Plaintiffs in violation of Rule 10b–5. Plaintiff Peter Tsurekids, who owned 8,100 shares of the Preferred, filed an identical lawsuit in the United States District Court for the District of Nevada on May 22, 2002. The Honorable Kent Dawson, United States District Court for the District of Nevada, consolidated the actions on August 7, 2002. Defendants moved for judgment on the pleadings on October 22, 2002. Judge Dawson granted the motion, ruling the Plaintiffs failed to satisfy the heightened pleading standard for securities fraud. However, Judge Dawson granted leave for Plaintiffs to file an amended complaint, directing Plaintiffs to plead each claim with particularity as dictated in *In re Guess? Inc. Sec. Litig.*, 174 F.Supp.2d 1067, 1079–80 (C.D.Cal. 2000). Plaintiffs filed an Amended Complaint on November 21, 2003. Defendants again move for judgment on the pleadings, arguing that Plaintiffs failed to plead with particularity in conformity with *In re Guess?*. Defendants also argue that Plaintiffs lack standing to bring suit under the Securities Exchange Act.

## II. LEGAL STANDARD

When the pleadings are closed a party may move for judgment on the pleadings. *See* Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings based on a failure to state a claim upon which relief may be granted is essentially treated as a Rule 12(b)(6) motion to dismiss. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989). A judgment on the pleadings is appropriate "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Yanez v. United States*, 63 F.3d 870, 872 (9th Cir.1995). For purposes of a motion for judgment as a matter of law, the court accepts as true the non-moving party's allegations. *See Austad v. United States*, 386 F.2d 147, 149 (9th Cir.1967). Additionally, under the incorporation by reference doctrine, the Court may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to it. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999).

## III. DISCUSSION

### A. Standing to Sue Under the Federal Securities Laws

Defendants argue Plaintiffs lack standing to assert the federal securities fraud claim made in Count V of the Amended Complaint because Plaintiffs attain standing under Securities Exchange Commission ("SEC") Rule 10b–5 only by purchasing or selling a security. According to Defendants, none of the Plaintiffs tendered their shares of the Preferred in reliance of Defendants' statements in the Tender Offer, precluding their ability to bring suit under the federal securities laws. Plaintiffs contend they have standing to sue under the "forced seller" doctrine because they were forced to fundamentally change the nature of their investments as a result

of Defendants' allegedly fraudulent schemes.

To state a cause of action for securities fraud, a plaintiff must allege that he or she reasonably relied upon fraudulent statements made by the defendant in connection with purchasing or selling a security. *See* 17 C.F.R. § 240.10b–5 (prohibiting fraud "in connection with the purchase or sale of any security.") Generally, a plaintiff has standing to allege injury from a securities fraud only if he or she was a defrauded purchaser or seller. *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 463 (2d Cir.1952). The Supreme Court approved of the *Birnbaum* rule in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

The "forced seller" doctrine provides a cause of action under the federal securities laws to plaintiffs who are forced to convert their shares for money or other consideration, or who are forced to fundamentally change the nature of their investments as a result of a fraudulent scheme. *Vine v. Beneficial Fin. Co.*, 374 F.2d 627, 635 (2d Cir.1967). The forced sale doctrine is a means to bypass a plaintiff's requirement to prove reliance on misrepresentations when they were forced to sell their shares. *See id.* Thus, a plaintiff may attain standing without selling his securities if the nature of his investment fundamentally changed due to fraud. *Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1498 (9th Cir.1995). The Ninth Circuit recognizes the "forced seller" exception to the *Birnbaum* rule. *Mosher v. Kane*, 784 F.2d 1385, 1389 (9th Cir.1986) *overruled on other grounds by In re Washington Pub. Power Supply Sys. Sec.*

*Litig.*, 823 F.2d 1349, 1352 (9th Cir.1987). However, this doctrine does not apply to a plaintiff whose stock value merely decreased as a result of an allegedly fraudulent scheme. *Shivers v. Amerco*, 670 F.2d 826, 831 (9th Cir.1982). To attain standing, a plaintiff's interest in a security must change from an interest in a going enterprise to a right solely to a payment of money for shares. *See Dudley v. Southeastern Factor & Fin. Corp.*, 446 F.2d 303, 307 (5th Cir.1971); *Beebe v. Pac. Realty Trust*, 99 F.R.D. 60, 69 n. 6 (D.Or.1983). The Ninth Circuit rarely has found the forced seller doctrine applicable. *Jacobson*, 50 F.3d at 1498.

For example, in *Shivers*, the defendants controlled approximately 94% of Amerco's stock. *Shivers*, 670 F.2d at 828. The defendants decided to destroy the informal market for Amerco stock so that Amerco could acquire minority shareholders' stock at a low price. *Id.* The defendants voted to cause a 100–for–1 reverse stock split, and changed Amerco's repurchase policy to buy minority shareholders' stock at only 50% of the book value. *Id.* The Ninth Circuit affirmed the trial court's dismissal of this action, reasoning that the forced seller doctrine does not apply to plaintiffs who are not legally compelled to sell.[1] *Id.* at 830.

Here, Plaintiffs lack standing to assert claims for securities fraud because they are not purchasers or sellers of securities. Plaintiffs did not tender any shares of their Preferred in reliance on Defendants' alleged misrepresentations. Further, the forced seller doctrine does not apply to this case. The forced seller doctrine does not extend protection to all shareholders, regardless of whether or not

---

**1.** *Shivers* holds that *Travis v. Anthes Imperial Ltd.*, 473 F.2d 515 (8th Cir.1973), relied upon by Plaintiffs, does not apply because the Ninth Circuit did not expand the forced seller doc-

trine to include plaintiffs who were not legally compelled to sell, and in any case, the application of the forced seller doctrine in *Travis* was dictum. *Shivers*, 670 F.2d at 830.

they tendered their shares. Plaintiffs were not forced to sell their shares of the Preferred. Plaintiff's shares of Preferred did not leave Plaintiffs with an illiquid interest in a defunct company with Plaintiffs' only option being to sell the securities for cash. Plaintiffs still own their shares of Preferred, and have the option to convert the shares into common stock of Kinross Canada. (Am.Compl.¶ 39.) Plaintiffs are not forced sellers and have no standing to seek relief under either section 10(b) of the Securities Exchange Act or SEC Rule 10b–5. The Court therefore will dismiss Count V for lack of standing.

### B. Standards of Pleading

Defendants also move to dismiss Counts VI–VII of Plaintiffs' Amended Complaint. Count VI alleges Defendants knowingly or recklessly employed a manipulative and deceptive device or scheme to defraud in violation of SEC Rules 10b–5(a) and (c). Count VII alleges Defendants influenced and caused Kinam to engage in illegal conduct in violation of section 20(a) of the Exchange Act. With respect to Count VI, Defendants allege Plaintiffs failed to allege the requisite element of scienter to survive a motion to dismiss. Also, Defendants contend Count VII should be dismissed because Plaintiffs cannot state a claim for a substantive violation of federal securities law once Counts V and VI are dismissed. Plaintiffs argue the Amended Complaint alleges all required elements in conformity with *In re Guess?, Inc. Sec. Litig.* and Plaintiffs have pleaded each of their claims with the requisite particularity with regard to scienter. Further, Plaintiffs argue that because they sufficiently have alleged federal securities violations, the Court should not dismiss Count VII.

#### 1. Count VI–Scheme to Defraud in Violation of Rules 10b(a) and (c)

Defendants contend Plaintiffs failed to plead the existence of the requisite scien-ter to maintain a cause of action with respect to Count VI. Defendants also argue Plaintiffs are required to allege misrepresentations to support a claim under SEC Rule 10b–5(a) or (c). Plaintiffs argue they are not required to allege misrepresentation under SEC Rule 10b–5(a) or (c).

To state a claim for a primary violation under SEC Rule 10b–5(a) or (c), a plaintiff must allege that "the defendant: (1) committed a manipulative or deceptive act; (2) in furtherance of the alleged scheme to defraud; (3) scienter; and (4) reliance." *See SEC v. Zandford,* 535 U.S. 813, 819, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002); *In re Enron Corp. Secs., Derivative & ERISA Litig.,* 235 F.Supp.2d 549 (S.D.Tex.2002). While subsection (b) of SEC Rule 10b–5 provides a cause of action based on the making of an untrue statement of a material fact and the omission to state a material fact, subsections (a) and (c) are not so restricted and allow suit against defendants who, with scienter, participated in a course of business or a device, scheme or artifice that operated as a fraud on sellers or purchasers of stock even if these defendants did not make a materially false or misleading statement. *Id.* at 577.

To prevent plaintiffs from filing baseless securities claims, Congress enacted a heightened pleading standard for securities fraud plaintiffs. *See* 15 U.S.C. § 78u–4(b). The Private Securities Litigation Reform Act ("PSLRA") requires plaintiffs to allege that a defendant acted with a particular state of mind and "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendants acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). If these requirements are not met, the court must dismiss the claim. 15 U.S.C. § 78u–

4(b)(3). *In re Guess?* provides guidance on what factual allegations are sufficient to meet the heightened pleading standard:

Separately, for each alleged false or misleading statement, plaintiffs shall

1. State the false or misleading statement;

2. State whether the statement was written or oral;

    a. If the statement was written, identify the document in which it appeared-that is, provide the title and author of the document, the date it was prepared, and, if not a publicly-available document, name of the person or persons who reviewed it;

    b. If the statement was oral, state when and under what circumstances the statement was made, and by whom, if an allegation regarding an oral statement is not made on personal knowledge, state with particularity all facts upon which plaintiffs formed the belief that one or more of the defendants made the statement at the time and place at which it is alleged to have been made.

3. State why the statement was false or misleading at the time it was made, and state with particularity all facts upon which plaintiffs formed the belief that the statement was false or misleading;

    a. If plaintiffs allege that the falsity of the statement is shown by conflicting information in internal reports, identify the report (title, author, date prepared, recipient(s)) and indicate the portion of the report that contradicts the false or misleading statement;

    b. If plaintiffs allege that the falsity of the statement is shown by contemporaneous information inconsistent with a particular statement, state with particularity what the source of the information was, who had the information, and how plaintiffs learned of the information.

4. State particular facts giving rise to a strong inference of a degree of recklessness that strongly suggests actual intent to deceive;

    a. If plaintiffs allege that defendants received or possessed documents or information that was at odds with the alleged false or misleading statement, state all relevant facts supporting this belief;

    b. If plaintiffs allege that the information was contained in documents, state the title, date, and contents of such documents (with particularity), the identity of the person or persons who drafted such documents, the identity of the person or persons who reviewed such documents, how plaintiffs learned of the existence of the documents, and how plaintiffs know that defendants received these documents;

    c. If plaintiffs allege that the information was in a form other than written, state the source or sources of their information (how they learned of this information allegedly possessed by defendants) and how they know that the defendants possessed this information; and

5. With regard to allegations concerning the liability of the individual defendants for "group-published" information, plaintiffs must indicate the statements that they contend fall under the doctrine.

*In re Guess?, Inc. Sec. Litig.,* 174 F.Supp.2d at 1079–80 (C.D.Cal.2001).

In order to survive a motion to dismiss, a plaintiff also must allege facts, that taken together, create a strong inference of scienter. 15 U.S.C. § 78u–4(b)(2). Scienter requires proof of "deliberately reckless

or conscious misconduct." *In re Silicon Graphics*, 183 F.3d at 974. Thus, a plaintiff must state facts that "come closer to demonstrating intent, as opposed to just motive and opportunity." *Id.* The Court must consider "whether the total of plaintiff's allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1234 (9th Cir.2004).

█ With respect to Count VI, Plaintiffs fail to allege facts that would establish scienter. Plaintiffs' Amended Complaint alleges that "Defendants knowingly or recklessly employed a manipulative and deceptive device, scheme and/or artifice to defraud." (Am.Compl.¶ 156.) The Amended Complaint also identifies the acts Plaintiffs allege comprised Defendants' scheme. (*Id.*) Plaintiffs do not aver any facts that would raise a strong inference of scienter. Although Plaintiffs identify Defendants' primary motivation for their scheme as improving their bargaining position regarding the Echo Bay/TVX Merger, Plaintiffs' Amended Complaint does not allege facts regarding scienter. Mere recitation of motive is insufficient under the PSLRA. Thus, Plaintiffs' allegations fall short of the PSLRA's heightened pleading requirements, and the Court therefore will dismiss Count VI.

### 2. Count VII–Section 20(a) of the Securities Exchange Act

█ Defendants assert that because Plaintiffs have failed to satisfy the PSLRA's heightened pleading requirements with respect to Counts V and VI of the Amended Complaint, Plaintiffs cannot establish Defendants committed a primary violation of federal securities laws. Defendants thus argue Plaintiffs' Count VII claim under section 20(a) of the Securities Exchange Act fails as a matter of law. Plaintiffs argue Defendants' sole basis for seeking to dismiss Count VII is Plaintiffs' purported failure to allege securities causes of action in Counts V and VI.

To establish a claim under section 20(a) of the Exchange Act, a plaintiff must allege: (1) a primary violation of the federal securities laws; and (2) that the defendants possessed, directly or indirectly, power or control over the primary violator. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir.2000).

This Court already has ruled that Count V fails because Plaintiffs lack standing to assert federal securities claims based on fraudulent statements, and Count VI fails because Plaintiffs did not plead their securities claim with particularity. The Court concludes that Plaintiffs thus lack the underlying securities violation necessary to state a section 20(a) claim.

### C. Dismissal with Prejudice

Defendants urge this Court to dismiss Counts VI–VII with prejudice. Plaintiffs do not present reasons why a dismissal should be without prejudice.

Courts consider five factors to determine the propriety of granting leave to amend a complaint: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff previously has amended the complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). This Court's discretion to deny leave to amend is particularly broad when the plaintiff previously has amended the complaint. *Ascon Prop., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989). In *Ascon Properties*, the trial court dismissed the plaintiffs' first amended complaint because the plaintiffs alleged that notice of their claim had been given pursuant to the wrong statutory provision. *Id.* at 1152. The plaintiffs amended their complaint,

but failed to correct the error. *Id.* The trial court dismissed the complaint again, but did so with prejudice. *Id.* The Ninth Circuit affirmed the trial court's dismissal with prejudice of the second amended complaint, noting the trial court's broad discretion to dismiss a complaint with prejudice when the plaintiffs have been given an opportunity to amend the complaint. *Id.* at 1161.

Here, Plaintiffs failed to plead their securities claims with particularity, despite a prior dismissal and the opportunity to cure their pleading defects. Further, Defendants would suffer prejudice if Plaintiffs were allowed to amend their complaint again. Defendants have incurred substantial litigation costs that could have been avoided if Plaintiffs complied with *In re Guess?* as directed. Thus dismissal of Counts V, VI, and VII with prejudice is warranted.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Judgment on the Pleadings (Doc. # 76) is hereby GRANTED. Counts V, VI, and VII of the Amended Class Action Complaint are dismissed with prejudice.