**Mark S. BRANT, an individual, Plaintiff,**

v.

**CCG FINANCIAL CORP., an Oregon corporation; CCG Consulting, Inc., d/b/a Coast Consulting Group, an Oregon corporation; Jerome Rose, an individual; Industrial Indemnity Corporation, a California corporation; Shultz Corporation, an Oklahoma corporation; Shultz Cattle Breeding, Inc., a Texas corporation; Shultz Cattle Company, Inc., an Oklahoma corporation; William B. Shultz, an individual; J. Michael Belanger, an individual; Zachary L. Shultz, an individual; Arthur C. Shultz, an individual; jointly and severally, Defendants.**

**Civ. No. 87–655–FR.**

United States District Court,
D. Oregon.

Feb. 17, 1988.

Donald W. McEwen, McEwen, Gisvold, Rankin & Stewart, Portland, Or., Howard K. Schwartz, West Bloomfield, Mich., for plaintiff.

David B. Markowitz, Peter H. Glade, Markowitz & Herbold, P.C., Portland, Or., for defendants CCG Financial Corp., CCG Consulting, Inc., dba Coast Consulting Group, Marilyn C. Rose, Jerome Rose and Michael F. Hipps.

Ronald E. Bailey, R. Erick Johnson, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., Thomas B. Donovan, Barry W. Lee, Dinkelspiel, Donovan & Reder, San Francisco, Cal., for defendant Industrial Indem. Corp.

Kim T. Buckley, Esler, Stephens & Buckley, Portland, Or., Gerald V. Weigle, Jr., Dinsmore & Shohl, Cincinnati, Ohio, for defendants Shultz Corp., Shultz Cattle Breeding, Inc., and Shultz Cattle Co., Inc.

## OPINION

FRYE, District Judge:

The matters before the court are:

1. Defendant Industrial Indemnity Corporation's (IIC's) motion to dismiss counts III and VIII of the amended complaint; and

2. Defendants Shultz Corporation, Shultz Cattle Breeding, Inc., Shultz Cattle Company, Inc., William B. Shultz, J. Michael Belanger, Zachary L. Shultz, and Arthur C. Shultz's (Shultz defendants') motion for an order requiring plaintiff, Mark S. Brant, to state with particularity counts I, II, VI, VII and VIII of plaintiff's amended complaint pursuant to Fed.R.Civ.P. 9(b) and to dismiss plaintiff's claims for exemplary damages in counts I and II.

## ALLEGATIONS OF THE COMPLAINT

This action arises out of a cattle breeding investment program. In the last quarter of 1983, Brant entered into negotiations with defendant Shultz Corporation, and/or other defendant corporations which are Shultz Corporation's wholly owned subsidiaries, for the purchase of approximately 5,000 head of cattle and thereafter for the care, maintenance, and ultimate sale of the animals.

In December, 1983, Brant purchased the cattle for $600 per head. Brant made a cash down payment of approximately $750,000, with the remainder of the purchase price evidenced by a full recourse promissory note signed by Brant. At the time of the purchase, Brant also signed 1) a "Consulting Agreement" designating Shultz Corporation as manager to receive compensation for consulting services rendered with respect to the initial purchase of the cattle and providing charges for the care, maintenance and sale of the cattle; and 2) a promissory note in the amount of $2,625,000 made payable to John Falen, a rancher doing business in the State of Nevada. Falen was not personally known by Brant. The transaction was completed at the direction of the Shultz Corporation.

On February 15, 1984, Brant executed a "Loan Agreement" with Idaho First National Bank, providing for a line of credit in the amount of $2,000,000 drawable at the rate of $450 for each head of cattle. The proceeds from the line of credit were to be used primarily to retire Brant's indebtedness to Falen. Arrangements for the "Loan Agreement" which Brant signed with the Idaho First National Bank were made by defendant Michael Belanger, a principal of the Shultz Corporation, and other Shultz defendants.

Shortly thereafter, the Shultz defendants requested that Brant make an additional investment in order to provide continuing support for the cattle herd. The Shultz defendants advised Brant that they were seeking a surety bond in connection with an offering of cattle which they had previously made by selling limited partnership interests in limited partnerships formed by them and that they would obtain such additional capital on behalf of Brant by increasing his indebtedness, under obligations to be guaranteed by the surety bond.

Sometime in early 1984, William Shultz, a principal in the Shultz Corporation, and Bellanger engaged the services of defendant Coast Consulting Group (CCG) and its principal, Jerome Rose, for the purpose of obtaining the surety bond. Sometime prior to June 22, 1984, Rose advised the Shultz defendants that he would be able to obtain a surety bond from defendant IIC. Rose further advised the Shultz defendants that as a condition precedent to issuing the surety bond, IIC would require the following:

(a) That a trust be established with the trustee being given broad powers to manage and supervise the maintenance of the cattle purchased by the Plaintiff, and the other investors in the limited partnerships, since Defendant IIC, as the prospective surety, was not satisfied with the skills and ability of Defendant Shultz Cattle Corporation with respect to such matters; and

(b) That Plaintiff, and the investors in the limited partnerships, establish certain loss and reserve funds in the approximate amount of $3,250,000, to be paid to the Trustee under the above alleged trust, to provide for payments due under any indebtedness secured by the surety bonds, in the event that any default was made by Plaintiff and/or the other investors; and further, to provide for payment of the reasonable fees and expenses of the Trustee, in the event that the investment income from such funds during the period of the trust was insufficient to pay such expenses; and

(c) That Defendant IIC had determined that Defendant Jerome Rose and/or one or more corporate entities owned or controlled by such Defendant should serve as the Trustee.

(Plaintiff's Amended Complaint, pp. 8–9).

Sometime in June, 1984, Brant met with Belanger and Rose in Rose's office in Portland, Oregon to review the documents drafted by IIC to establish the trust. Rose

and Belanger undertook to inform and advise Brant as to the material terms and conditions of the trust and as to the full nature of the agreements between the parties. Rose and Bellanger reviewed with Brant the financial projections with respect to his cattle investments, including the effect of borrowing additional amounts, in part necessary to fund the loss and reserve funds under the trust and in part to pay the premiums required for issuance of the surety bond by IIC. During the course of the meeting, Rose advised Brant that he and his associates in CCG were expert in the management of cattle, and that based upon such expertise and the preparation of the financial projections by CCG, any further investment made by Brant would be financially successful.

In reliance upon the representations made by Rose and Bellanger, Brant executed the documents necessary to obtain the surety bond, including a "Trust Agreement" which provides in pertinent part as follows:

(a) The "Trustors" under the trust agreement were Plaintiff, and Defendant Shultz Corporation. The other parties to the Trust Agreement were Defendant CCG Financial Corp., as Trustee, and Defendant IIC, as "surety"; and

(b) The beneficiaries under the trust were Plaintiff, Defendant Shultz Corporation, and Defendant IIC; and

(c) The stated purpose of the Trust was to charge the Trustee with the duty to collect payments due under the indebtedness incurred by Plaintiff, and the limited partners, for the cattle programs; to hold the above alleged reserve funds, and to make payments therefrom to cure any default on such indebtedness with respect to Plaintiff and/or the limited partners; to supervise the activities of Defendant Shultz Cattle Corporation, and related entities in their management of the animals both under their agreements with Plaintiff, and in their capacity as general partner of the various limited partnerships; to pay certain expenses of the surety, and for the administration of the Trust; and to return to Plaintiff, and to the limited partnerships, all funds remaining in the Trust after full payment of all indebtedness incurred by Plaintiff and others secured by the indemnity bond issued by Defendant IIC.

(Plaintiff's Amended Complaint, p. 11).

Contemporaneous with or shortly after the execution of the Trust Agreement, CCG and Rose incorporated CCG Financial which entered into an agreement with CCG to perform the management duties of the Trustee. CCG then entered into an agreement with the Shultz Corporation to provide the actual management services with respect to Brant's cattle, which was virtually identical to the prior agreement between the Shultz Corporation and Brant concerning management of the cattle.

Contemporaneously with the issuance of the surety bond, IIC and certain Shultz defendants acting in concert with Rose and CCG secured the independent third party financing necessary to fund Brant's full recourse notes. These transactions increased Brant's liability from $2,000,000 to more than $5,000,000, with no additional cattle being purchased. Proceeds from this financing were used to pay the prior obligation to Idaho First Bank and to fund the reserves required by the Trust Agreement and exhibits appended to the Trust Agreement at a subsequent date.

Subsequent to June of 1984, the income nominally to be received by Brant from the sale of his calf crop, contrary to representations made by Belanger and Rose, have not been sufficient to pay even the interest due on the indebtedness incurred by Brant. The reserve funds deposited with the trustee have been substantially eroded; the herd has not grown; approximately 1800 head entrusted to Falen, the Nevada rancher, by the managers of the herd were converted by Falen; and monies from calf sales used for maintenance of the cattle by one Bailey were diverted with approval by Brant's management and without Brant's consent in order to maintain Bailey's operation.

Brant contends that the following representations were made to him by Belanger and Rose with full knowledge that they

were false and untrue or with reckless disregard of the truth with the intent that Brant rely upon the representations and that Brant did in fact rely upon the representations.

(a) That Defendants Coast Consulting Group, Jerome Rose, and other principal officers of such corporation and related entities were expert in the management of cattle; and

(b) That the operating results which Plaintiff might reasonably be expected to achieve from the operation of his cattle herd by Defendants Shultz Corporation and its Defendant subsidiaries and/or Defendant Coast Consulting Group would fully provide not only for maintenance expenses, but would also fully provide for all interest due under his indebtedness; would provide for full payment of all surety premiums owed to Industrial Indemnity; and would also provide for sufficient revenue and progeny so as to retire all of Plaintiff's indebtedness upon maturity; and

(c) That all charges made by Defendant Coast Consulting Group and its related entities as Trustee under the above alleged Trust Agreement would be fair and reasonable as measured by a fiduciary standard; and that all agreements between the Trustee, and any controlled entity, or controlling person, would not provide for greater compensation than in similar agreements arrived at by independent third parties; and

(d) That the appointment of Defendant Coast Consulting Group and its related entities as Trustee, and the establishment of the Trust and reserves required thereunder, was a condition precedent to the issuance of the surety bond by Defendant IIC; and

(e) That the Defendants named in subparagraph (b) of this Paragraph 28 would use care and due diligence not only in the management of Plaintiff's cattle, but also in the selection of any third party to perform such management services in their behalf.

(Plaintiff's Amended Complaint, pp. 15–16).

Brant further asserts that in order to induce him to execute the Trust Agreement and related documents, Belanger and Rose omitted to disclose the following facts known to them and material to Brant's determination as to whether to complete the cattle purchase:

(a) That Defendant Coast Consulting Group, and its related corporations had entered into a certain "proxy agreement" with Defendant IIC, a co-beneficiary, giving such beneficiary the sole right to remove the Trustee without the knowledge or consent of the other beneficiaries; and

(b) That the Trustee, and Defendant IIC had entered into certain compensation agreements providing for the Trustee compensation in excess of that disclosed to the Plaintiff; and

(c) That the premium to be charged by Defendant IIC for issuance of the surety bond, particularly in light of the reserve funds which Plaintiff was required to pay to the Trustee, were substantially in excess of premiums paid in similar circumstances; and

(d) That unless Plaintiff completed the transaction in June of 1984, Shultz Corporation, and its related entities would be rendered insolvent; and

(e) That the sole approval required for the payment of fees and expenses to Defendant Coast Consulting Group, its related entities, and officers and directors was that of Defendant IIC, and that such matters would not be presented to the Plaintiff for his approval, in accordance with the laws governing trusts in the State of Oregon; and

(f) That under the terms of the Trust Agreement as originally drafted by counsel for Defendant IIC, for presentation to Plaintiff for approval, he was not required to make any contribution to the "Partnership Loss Funds"; and

(g) That Plaintiff was entitled to be represented by independent counsel of his own choosing and/or was entitled to obtain or specifically decline the services of an "offeree representative" as the same is defined in the Rules promulgated by the Securities and Exchange Commis-

sion prior to his finalizing his investment decision; and

(h) That the Trust Agreement, as drafted by counsel for Defendant IIC, created a conflict of interest among the co-beneficiaries.

(Plaintiff's Amended Complaint, pp. 16–17).

Brant subsequently filed this action for damages, recision and accounting alleging eight counts against the various defendants including violations of federal securities law, breach of fiduciary and contractual obligations, negligence and fraud.

## Motion of IIC

IIC is named as a defendant in three counts in the amended complaint: 1) Count III—aiding and abetting a violation of section 10(b) of the Securities Exchange Act; 2) Count V—common law negligence; and 3) Count VIII—common law fraud. IIC moves the court for an order dismissing the third and eighth counts of the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6).

### Count III—Aiding and Abetting Under Section 10(b)

■ The parties agree that the elements of a cause of action for aiding and abetting a violation under section 10(b) are:

1) the existence of an independent primary wrong; 2) actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and 3) substantial assistance in the wrong.

*Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir.1982). IIC contends that Brant has failed to state a claim against IIC for aiding and abetting a violation in that he has failed to allege any of the three critical elements noted above.

Assuming without deciding the existence of an independent primary wrong of which IIC had actual knowledge, Brant must allege facts that support his claim that IIC engaged in an activity or role that furthered the alleged fraud. As the court noted in *Wright v. Schock*, 571 F.Supp. 642 (N.D.Cal.1983), " 'substantial assistance in the wrong' requires a significant and active, as well as knowing participation in the wrong." 571 F.Supp. at 663. Mere silence or inaction will not support a cause of action where there is no duty to disclose.

In this case, Brant alleges that Belanger and Rose violated section 10(b) by making certain misrepresentations and omissions. Brant then alleges in conclusory terms that IIC knew of these misrepresentations or omissions and that IIC provided the surety bond in the refinancing transaction and prepared the documents necessary to evidence the indemnity and security matters relating to the bond. In support of his contention that IIC played a role in the wrongdoing, Brant alleges that IIC's employees or agents reviewed the financial projections presented to him in June, 1984; that IIC prepared the formal documents affecting the refinancing transaction; and that IIC had actual knowledge that Rose had told Brant that IIC required that Rose act as trustee and that Rose represented to Brant that he was an expert. (Plaintiff's Amended Complaint, Count III, ¶ 38).

The acts or omissions that comprise the necessary substantial assistance must be pleaded with specificity pursuant to Fed.R. Civ.P. 9(b). The only acts alleged by Brant as to the activities of IIC are reviewing and preparing documents necessary to complete the issuance of the bond. These are ministerial tasks and do not provide substantial assistance in any wrongdoing as required to prove liability for aiding and abetting a violation under section 10(b) of the Securities Act. Beyond the bare and conclusory allegation that IIC knew of alleged wrongdoing, Brant has failed to allege any specific facts that would satisfy the requirement that IIC play some active role in the alleged wrong. *Accord Harrison v. Enventure Capital Group, Inc.*, 666 F.Supp. 473 (W.D.N.Y.1987). Count III of the amended complaint fails to state a claim against IIC.

### Count VIII—Fraud

■ IIC argues that count VIII should be dismissed because Brant has alleged fraudulent conduct on the part of Rose and Belanger and not IIC. IIC argues further that vicarious liability will not support Brant's claim against IIC. Brant responds by asserting that he has not alleged vica-

rious liability but joint and several liability among co-conspirators to commit common law fraud.

For the reasons stated in the discussion above as to count III, the court finds that Brant has failed to allege facts to support a claim that IIC contributed actively in a fraudulent scheme involving Brant. Brant fails to allege a false and material representation or omission by IIC which contributed to Brant's alleged injury. Count VIII of the amended complaint will be dismissed as to defendant IIC.

IIC asks that the court dismiss counts III and VIII without leave to amend on the grounds that it is clear from the amended complaint that IIC's role in the subject transactions was limited to issuance of a financial guaranty bond and the drafting of related documents. The court concludes that IIC is correct.

### Motion of the Shultz Defendants

■ The Shultz defendants move the court for an order requiring Brant to allege with particularity counts I, II, VI, VII and VIII of the amended complaint. In addition, these defendants move to dismiss exemplary damages from counts I and II of the amended complaint.

The Shultz defendants argue that the amended complaint should be dismissed because it does not adequately distinguish between the corporate and the individual defendants or adequately allege the particular roles of each in the alleged fraudulent or securities violations. The Shultz defendants contend that it is impossible to know the particular misconduct that Brant has in mind as to each one.

Brant explains that the amended complaint specifically alleges fraudulent acts and omissions by defendant Belanger, a principal in the Shultz corporations, and specifically alleges that other individual defendants in the Shultz group were co-conspirators with Belanger. Further, as to the Shultz defendants' claim that Brant has not been specific in distinguishing between controlled corporations, Brant asserts that each of the named corporations are within a common group of corporations owned and controlled by the individual Shultz defendants. Brant explains that he does not have knowledge prior to extensive discovery as to exactly which corporation the Shultz defendants used to perpetrate the alleged fraudulent acts and omissions and conspiracy.

In all averments of fraud, the federal rules require that the circumstances constituting fraud be stated with particularity. Fed.R.Civ.P. 9(b). Rule 9(b) is designed to ensure that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute fraud so that they can defend against the charge and not just deny that they have done anything wrong. *Semegen v. Weidner*, 780 F.2d 727, 734 (9th Cir. 1985).

The court has reviewed the amended complaint and finds that it states the allegations of fraud adequately to allow the defendants to defend against the charges made. The motion to dismiss pursuant to Fed.R.Civ.P. 9(b) is denied.

■ As to the Shultz defendants' motion to dismiss the claims for punitive damages for violation of section 10(b) of the Securities Exchange Act of 1934 in Counts I and II, that motion must be granted. Punitive damages are not recoverable for violations of section 10(b) of the Securities Exchange Act of 1934. *Hatrock v. Edward D. Jones & Co.*, 750 F.2d 767, 771 (9th Cir.1984).

### CONCLUSION

Defendant IIC's motion to dismiss counts III and VIII is granted. The Shultz defendants' motion to dismiss pursuant to Fed.R.Civ.P. 9(b) is denied. The Shultz defendants' motion to dismiss the claims of punitive damages in counts I and II are granted.