**George B. NEWMAN, et al., Plaintiffs,**

v.

**COMPREHENSIVE CARE CORP.,
a Delaware corporation, et al.,
Defendants.**

**Civ. No. 91–759–JO.**

United States District Court,
D. Oregon.

April 22, 1992.

**1516**

David A. Urman, Ball Janik & Novack, Bruce M. Hall, Bruce Mac Gregor Hall, P.C., Portland, Or., for plaintiffs.

Mitchell E. Hornecker, Bernard M. Ryan, Schwabe Williamson & Wyatt, Portland, Or., for defendant Comprehensive Care Corp.

Carol A. Hewitt, Mark A. Turner, Ater Wynne Hewitt Dodson & Skerritt, Portland, Or., Michael W. Smith, Paul W. Jacobs, II, Orran Lee Brown, Laura B. Hernandez, Christian Barton Epps Brent & Chappell, Richmond, Va., for defendant Ronald I. Dozoretz First Hosp. Corp.

Bernard M. Ryan, Schwabe Williamson & Wyatt, Portland, Or., for defendants W. James Nicol, B. Lee Karns, Robert L. Kasselmann, Stanley Nelson and Thomas E. Nesbitt, Sr.

Thomas C. Sand, Miller Nash Wiener Hager & Carlsen, Portland, Or., for defendant Prudential–Bache Securities, Inc.

Richard M. Layne, Garvey Schubert & Barer, Portland, Or., for defendant Pettis Tester and Kruse.

Wayne D. Palmer, Kell Alterman & Runstein, Portland, Or., Edward L. Powers, Lawrence S. Kamerman, Richards & O'Neil, New York City, for defendant Bank of Tokyo Trust Co.

Michael H. Simon, Perkins Coie, Portland, Or., John F. Kay, Jr., Stephen A. Northrup, Donald R. Lee, Mary C. Hohman, Mays & Valentine, Richmond, Va., for defendant Sovran Bank, N.A.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

George Newman ("Newman"), JGN Corporation ("JGN"), George Boldt, individually and as trustee of the George B. Boldt, Inc. Profit Sharing and Retirement Trust ("Boldt"), Donald Armstrong ("Armstrong"), and George Robinette, III ("Robinette"), collectively referred to as "plaintiffs," bring this action against Comprehensive Care Corp. ("CompCare"), Ronald Dozoretz ("Dozoretz")[1], First Hospital Corporation ("FHC"), Pettis Tester and Kruse

1. Dozoretz is the chief executive officer, principal stockholder, and sole director of FHC.

("Pettis"), Prudential–Bache Securities, Inc. ("PBS"), Bank of Tokyo Trust Company ("BOTT"), Sovran Bank, N.A. ("Sovran"), W. James Nicol ("Nicol"), B. Lee Karns ("Karns"), Robert L. Kasselmann ("Kasselmann"), Stanley Nelson ("Nelson"), and Thomas E. Nesbitt, Sr. ("Nesbitt"), with Nicol, Karns, Kasselmann, Nelson, and Nesbitt collectively referred to as the "director defendants."

Plaintiffs allege jurisdiction under 15 U.S.C. § 78aa, federal securities law, 28 U.S.C. § 1331, federal question, 28 U.S.C. § 1332, diversity, and 28 U.S.C. § 1367, supplemental. Plaintiffs allege fifteen claims:

1. section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.-10b–5, against *all* defendants;

2. section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a), against the director defendants, Dozoretz, and FHC;

3. section 11 of the 1933 Act, 15 U.S.C. § 77k, against CompCare, FHC, and the director defendants;

4. section 12(2) of the 1933 Act, 15 U.S.C. § 77*l*, against *all* defendants, *except* BOTT and Sovran;

5. section 15 of the 1933 Act, 15 U.S.C. § 77*o*, against Dozoretz, FHC, and the director defendants;

6. ORS 59.115(1) against *all* defendants, *except* BOTT and Sovran;

7. ORS 59.115(3) against Dozoretz, FHC, PBS, Pettis, Sovran, BOTT, and the director defendants;

8. the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, against PBS, FHC, Dozoretz, and Pettis;

9. ORICO, ORS 166.720, against PBS, FHC, Dozoretz, and Pettis;

10. common law fraud against *all* defendants, *except* BOTT and Sovran;

11. negligence against *all* defendants;

12. gross negligence against *all* defendants;

13. breach of fiduciary duty against the director defendants;

14. conspiracy to breach fiduciary duty against FHC and Dozoretz; and

15. breach of fiduciary duty against FHC and Dozoretz.

Plaintiffs request punitives on claims 10, 12, 13, 14, and 15.

This lawsuit arose out of the failed merger between Compcare and FHC. FHC was to buy out and acquire CompCare. FHC and CompCare executed a merger agreement on April 25, 1989. CompCare shareholders were to receive a combination of cash, subordinated debentures, and stock in FHC. A proxy statement was issued by FHC and CompCare on August 14, 1989. On September 13, 1989, the stockholders approved the merger agreement. Subsequently, on September 17, 1989, a meeting, attended by Dozoretz and Karns, a director defendant, was held in Portland for shareholders. A press release announced the merger's failure on October 27, 1989, when Sovran pulled out of the financing commitment.

Plaintiffs submit that the defendants failed to disclose and in fact actively concealed that the merger was contingent upon financing and failed to disclose Dozoretz controlled both FHC and CompCare, thus working on both sides of the negotiation.

Other lawsuits have similarly been filed (i.e., *Gildon* class action filed in California on October 31, 1989, *Himler* class action in Virginia and *McGrath* class action filed in New York—the three actions were consolidated and are collectively referred to as "*Himler*").

*Standards*

1. Motion to Dismiss

■■■■ Dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). For the purpose of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true.

*Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1332 (9th Cir.1987).

## 2. Fraud Allegations

 In all claims of fraud, plaintiffs are required to state the circumstances constituting the misconduct with particularity. Fed.R.Civ.P. 9(b). The fundamental purpose of this rule is to put defendants on notice of the particular conduct that is alleged to constitute the fraud charged "so that they can defend the charges and not just deny that they did anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985). In a case that involves multiple defendants, a plaintiff must state the *role* of the individual defendants with particularity. *Blake v. Dierdorff*, 856 F.2d 1365, 1370 (9th Cir.1988).

## Personal Jurisdiction

The gist of Sovran's and BOTT's motion is that they merely were to provide financing for the proposed transaction. BOTT and Sovran submit there was absolutely no connection between the proposed financing and the State of Oregon.

Title 15 U.S.C. § 78aa provides

[t]he district courts ... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder.... Any criminal proceeding may be brought in the district wherein *any action or transaction constituting the violation occurred.* Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder ... may be brought in any such district or *in the district wherein the defendant is found or is an inhabitant or transacts business,* and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

(emphasis added).

Notwithstanding the nationwide service of process, BOTT submits that § 78aa does not provide this court with personal jurisdiction because BOTT cannot be found in Oregon, because BOTT is not an inhabitant of Oregon, and because BOTT does not transact business in Oregon. *See Kinsey v. Nestor Exploration Ltd.*, 604 F.Supp. 1365, 1373 (E.D.Wash.1985) ("Whatever may be the correct test ... [§] 78aa ... [is] to be limited and defined in terms of basic fairness as mandated by the Due Process Clause of the Fifth Amendment.").

 BOTT appears to be confusing venue with personal jurisdiction. *See Bourassa v. Desrochers*, 938 F.2d 1056, 1057 (9th Cir.1991). Plaintiffs correctly counter that the standard for exercising personal jurisdiction on securities law claims under § 78aa is whether there are minimum contacts with the United States. *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir.1985); *Bourassa v. Desrochers*, 938 F.2d 1056, 1057 (9th Cir. 1991). Admittedly, BOTT and Sovran have minimum contacts with the United States.

Even if § 78aa provides this court with personal jurisdiction, BOTT and Sovran both claim that the claim premised upon jurisdiction under section 78aa must be dismissed for failure to state a claim. Then the other claims asserted against BOTT and Sovran must be dismissed because there is no independent basis for personal jurisdiction. *See IUE AFL–CIO Pension Fund v. Locke Mach. Co.*, 726 F.Supp. 561, 571 (D.N.J.1989); *Mirotznick v. Sensney, Davis & McCormick*, 658 F.Supp. 932, 942 (W.D.Wash.1986).

On the contrary, argue plaintiffs, this court has personal jurisdiction over BOTT and Sovran under Oregon's long arm statute and under traditional personal jurisdiction notions.

"It is clear that the party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists." *Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977).

Because Oregon "law confers jurisdiction coextensive with due process, this court need only analyze whether the exercise of jurisdiction comports with due process." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1194 (9th Cir.1988); *see Raffaele v. Compagnie Generale Maritime*, 707

F.2d 395, 396 (9th Cir.1983) ("Oregon's long-arm statute, Rule 4, ... has been interpreted to confer jurisdiction 'to the outer limits' of due process.").[2]

The court has personal jurisdiction over the banks if the banks "had certain 'minimum contacts' with Oregon 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (citations omitted); *Sinatra* at 1194.

### 1. General Jurisdiction

■ This court does not have general jurisdiction over Sovran or BOTT. For general jurisdiction, plaintiffs must show that the banks have "substantial" or "continuous and systematic" contacts with Oregon. *See Sinatra* at 1194.

Plaintiffs point to the fact that "99.98% of its [BOTT's] stock, as of September, 1991, is owned by the Bank of Tokyo Ltd., a company that is thoroughly entrenched in Oregon." Plaintiffs' Response (# 118), p. 10.

■ The mere fact that BOTT's parent corporation does business in Oregon cannot alone render BOTT subject to this court's general personal jurisdiction. *Uston v. Hilton Casinos, Inc.*, 564 F.2d 1218, 1219 (9th Cir.1977). The activities of the parent corporation are irrelevant absent some indication that "the formal separation between parent and subsidiary is not scrupulously maintained." *Uston v. Grand Resorts, Inc.*, 564 F.2d 1217, 1218 (9th Cir.1977).

Plaintiffs, upon whom the burden rests, have shown nothing to indicate that the presence of Bank of Tokyo is enough for this court to have jurisdiction over its subsidiary, BOTT. While BOTT concedes that some directors overlap, the operations of each entity are entirely distinct and separate. *See Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 425–26 (9th Cir.1977).

■ With regard to Sovran, plaintiffs submit that Sovran has solicited commer-

cial loans in Oregon, that Sovran engages in national advertising, that Sovran has filed at least three debt collection lawsuits in Oregon between 1987 and 1989, and that Sovran has about 20 trust beneficiaries in Oregon for whom Sovran serves as trustee. *See e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984).

■ Each of the above-alleged contacts by Sovran is unrelated to the present cause of action. *See Helicopteros*, 466 U.S. at 418, 104 S.Ct. at 1874. In addition, national advertising is insufficient to confer general jurisdiction. *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1131 (10th Cir.1991); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 376 (5th Cir.1987). While Sovran admittedly has some contacts with Oregon, the contacts are irregular and insufficient to confer general jurisdiction. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir.1984), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985).

### 2. Specific Jurisdiction

■ The test to determine whether the court may exercise specific personal jurisdiction over defendants arising out of their forum-related activities is as follows:

1. The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its law.
2. The claim must be one which arises out of or results from the defendant's forum-related activities.
3. Exercise of jurisdiction must be reasonable.

*Sinatra*, 854 F.2d at 1195.

"In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which

**2.** Plaintiffs' argument that it is not necessary to conduct a due process analysis has been rejected by the Ninth Circuit. *Gray & Co. v. Firsten-*

*berg Mach. Co.*, 913 F.2d 758, 760 n. 1 (9th Cir.1990).

allows or promotes the transaction,of business within the forum state." *Sinatra* at 1195.

Further, "in a tort case ... 'within the rubric of 'purposeful availment' the Court has allowed the exercise of jurisdiction over a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a *foreign* act having *effect* in the forum state.'" *Roth v. Marquez,* 942 F.2d 617 (9th Cir.1991) (citations omitted).

Finally, the court must determine that the exercise of personal jurisdiction is reasonable.

> The court examines seven factors to determine reasonableness: the extent of the purposeful interjection; the burden on the defendant; the extent of conflict with sovereignty of the defendant's state; the forum state's interest in adjudicating the suit; the most efficient judicial resolution of the dispute; the convenience and effectiveness of relief for the plaintiff; and the existence of an alternative forum.

*Sinatra* at 1199.

█ Plaintiffs' evidence of BOTT's and Sovran's forum-related activities is nonexistent, much less does the evidence satisfy the "but for" test to determine the "arising out of" requirement. *See Gray & Co. v. Firstenberg Mach. Co.,* 913 F.2d 758, 761 (9th Cir.1990). Plaintiffs' assertion that "the Oregon connection was obvious" is unsupportable. Plaintiffs' Response (# 118), p. 14. All plaintiffs can do is point to the forum-related activities of themselves and of third parties, such as Dozoretz and Karns, one of the director defendants. This is clearly insufficient. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984).

In conclusion, if claim one, the § 10(b) and Rule 10b–5 claim, remains in this action, this court has personal jurisdiction over BOTT and Sovran because BOTT and Sovran have minimum contacts with the United States. However, if the securities claim is dismissed against them, this court does not possess personal jurisdiction over BOTT and Sovran with respect to the other claims.

*Standing*

█ The threshold issue this court must decide is whether plaintiffs have standing to pursue their securities claims under § 10(b) and Rule 10b–5.[3] Plaintiffs must be "purchasers" or "sellers" of securities to have standing. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (adopting the *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.1952) rule).

While the *Blue Chip* court recognized that certain kinds of plaintiffs would be excluded by imposing a purchaser or seller requirement, the *Blue Chip* court was undaunted.

> Three principal classes of potential plaintiffs are presently barred by the *Birnbaum* rule. First are potential purchasers of shares ... who allege that they decided not to purchase because of an unduly gloomy representation.... Second are actual shareholders in the issuer who allege that they decided not to sell their shares because of an unduly rosy representation.... Third are shareholders ... who suffered loss in the value of their investment due to corporate or insider activities.... It has been held that the shareholder members of the second and third of these classes may frequently be able to circumvent the

---

**3.** Title 15 U.S.C. § 78j(b), section 10(b), provides it shall be unlawful "[t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device."

A rule promulgated by the SEC under section 10(b), commonly known as Rule 10b–5, provides, in part, as follows:

It shall be unlawful for any person....
(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

*Birnbaum* limitation through bringing a derivative action....

*Blue Chip Stamps*, 421 U.S. at 737–38, 95 S.Ct. at 1926.

There are two different types of stock at issue in this case: stock plaintiffs owned prior to the announcement of the proposed merger that was retained and stock plaintiffs purchased in anticipation of the merger.

### 1. Retained Stock

■ There are three recognized exceptions to the standing requirements of *Blue Chip*.[4] *Securities Investor Protection Corp. v. Vigman*, 803 F.2d 1513, 1517 (9th Cir.1986). The first exception is called the "aborted seller or purchaser" doctrine. "If a plaintiff had a contract to buy or sell a security, the contract right will satisfy the *Birnbaum* rule, even if the contract were breached." *Vigman*, 803 F.2d at 1518. The aborted seller or purchaser doctrine does not satisfy the *Birnbaum* rule if plaintiff was induced to *retain* securities through defendants' fraud. *Vigman*, 803 F.2d at 1518 (citing *[b]ut see Lewelling v. First California Co.*, 564 F.2d 1277, 1279 (9th Cir.1977)).

■ The second exception is the "pledge" doctrine. "Under this doctrine, when stock is pledged as collateral for a loan, the pledgor has constructively sold the stock and the pledgee constructively bought it, even though no foreclosure has taken place." *Vigman*, 803 F.2d at 1518.

■ The third exception to the *Birnbaum* rule is called the "forced seller" exception. This exception "arose in connection with mergers in which a plaintiff alleged fraud in the procurement of the merger." *Vigman*, 803 F.2d at 1518.

After a merger is approved, a stockholder, under most state laws, has two choices: exchange the original stock for the securities and/or cash specified as the purchase price in the merger agreement, or exercise statutory appraisal

rights and have the court determine the value of the shares.... In either event, there is the equivalent of a forced sale whenever a shareholder's investment substantially changes its character or when a shareholder is forced to accept a liquidated value for his shares.

*Vigman*, 803 F.2d at 1518; *see also Shivers v. Amerco*, 670 F.2d 826, 830–31 (9th Cir.1982) (recognizing the "forced-seller" exception, but limiting the exception to circumstances where the seller was in fact forced to sell).

Plaintiffs attempt to create a hybrid exception, the "aborted forced purchaser" exception, a combination of the first and third exceptions. This court declines to create such an exception.

■ Plaintiffs unsuccessfully rely upon a case overruled, *Mosher v. Kane*, 784 F.2d 1385, 1389 n. 5 (9th Cir.1986), *overruled on other grounds, In re Washington Public Power Supply Sys. Sec. Litig.*, 823 F.2d 1349 (9th Cir.1987) (*en banc*) (overruling *Mosher* and holding that § 17(a) of the 1933 Act does not provide a private cause of action), a case decided before the Supreme Court's adoption of the *Birnbaum* rule, *Walling v. Beverly Enter.*, 476 F.2d 393 (9th Cir.1973), and a case from a district court in Colorado. *Brooks v. Land Drilling Co.*, 564 F.Supp. 1518 (D.Colo. 1983). Plaintiffs do not have standing to pursue their securities claims based upon stock that plaintiffs retained in anticipation of the merger.

Plaintiffs did not possess a contract for the purchase of stock. *Cf. Walling*, 476 F.2d 393 (contract existed between plaintiffs and defendant); *Mosher*, 784 F.2d at 1388–89 (finding contractual relationship and that transaction aborted because of the fraud). The only contract was for Comp-Care and FHC to merge. The "aborted seller or purchaser" doctrine is not met. *See e.g., Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646, 649 (9th Cir.1988), *cert. denied*, 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989); *In re Fin. Corp. of*

---

**4.** At least one commentator doubts that the "aborted seller" doctrine survived *Blue Chip*, and proffers that the "forced seller" doctrine

should be interpreted narrowly in light of *Blue Chip*. Hazen, 2 *The Law of Securities Regulation*, § 13.3, p. 74–75 (2nd ed. 1990).

*America Shareholder Litig.*, 796 F.2d 1126, 1130 (9th Cir.1986).

Likewise, the third exception is *not met* because plaintiffs were not forced to sell their shares. Plaintiffs are no different than shareholders who decided not to sell their stock because of "unduly rosy representation[s]." *Blue Chip Stamps*, 421 U.S. at 738, 95 S.Ct. at 1926; *Shivers*, 670 F.2d at 829. As such, plaintiffs lack standing.

#### 2. Stock Purchased in Reliance

Plaintiffs point to paragraphs 10–12 and 31 to support their argument that they have standing with respect to stock purchased in reliance of the merger.

 While the court notes that plaintiffs submit that they actually purchased stock, the allegations in the complaint are insufficient. The court will allow plaintiffs to replead *only* as to the stock that plaintiffs allege they purchased in reliance upon the alleged misrepresentations in anticipation of the merger. Plaintiffs must detail which plaintiffs bought stock, in what amount, when, and upon what alleged misrepresentations those plaintiffs relied. Fed.R.Civ.P. 9(b).[5]

### *Statute of Limitations*

 In *Lampf v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991), the Court held that the statute of limitations in an action based upon section 10(b) is one year from discovery, but no later than three years from the date of the occurrence. For the claims under the 1933 Act, the same statute of limitations is codified and the result is the same. 15 U.S.C. § 77m. This case involves the one-year discovery statute of limitations.

Because of the murky issues surrounding tolling and the actual date counting, this court declines to grant the motions to dismiss based upon the statute of limitations at this time. The court invites these defendants to file summary judgment motions on plaintiffs' third amended complaint. Plaintiffs are ordered to allege compliance with the statute of limitations in the utmost of particularity. Plaintiffs are ordered to allege specific dates, to specifically allege tolling, if applicable, and to specifically allege when they acquired knowledge.

### *Aider and Abettor*

 Unlike the 1933 Act, which spells out those persons who may be liable, *see e.g.*, 15 U.S.C. § 77k, the 1934 Act allows for aider and abettor liability. The elements to state a claim for aiding and abetting are 1) the existence of an independent primary wrong; 2) actual knowledge or reckless disregard by the alleged aider and abettor of the wrong and of his or her role in furthering it; and 3) substantial assistance in the wrong. *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir.1991); *Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646, 652 (9th Cir.1988) *cert. denied*, 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir. 1987); *Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *In re ZZZZ Best Sec. Litig.*, [Transfer Binder 1990], Fed.Sec.L.Rep. (CCH) para. 95,416 at 97,071 (C.D.Cal.1990).

The court does not read the Second Amended Complaint as alleging a claim for aiding and abetting against Pettis, but only against Sovran and BOTT, *see* Second Amended Complaint (# 69), p. 48–51, especially para. 30, and compare with p. 40, but the court will assume for purposes of dis-

---

5. A finding of standing does not render the plaintiff home free. "To show a Rule 10b–5 violation, a plaintiff must prove a 'causal connection between a defendant's misrepresentation and [the] plaintiff's injury.'" *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1485 (9th Cir.1991) (citation omitted) (this requirement is comprised of two elements: transaction causation, the violation in question caused plaintiff to engage in the transaction, and loss causation, the misrepresentations caused the harm). A plaintiff "must also prove a proximate relationship between the plaintiff's injury and the purchase or sale of a security." *Levine*, 950 F.2d at 1486. Additionally, "a plaintiff must establish a connection between the defendant's alleged misrepresentation and the security at issue." *Id.*

cussion that the claim is alleged against Pettis also.[6]

As a related matter, the court does not read plaintiffs' complaint as alleging primary violations against Pettis, Sovran, and BOTT. Indeed, beyond doubt the complaint could not allege primary violations against these ancillary players.

The alleged primary wrongs are the alleged 10b–5 violations. Plaintiffs allege that Pettis, Sovran, and BOTT had actual knowledge of the wrong and knowledge of their role in furthering the wrong. What is at issue is the third prong: "substantial assistance."

■ Aider and abettor liability based upon actual misrepresentations will not lie based upon the mere appearance of BOTT's, Sovran's, or Pettis' name on promotional materials. *See Levine* at n. 4. In *Levine*, not only did the trust company defendant allow its name to be used, but accepted phone call inquiries about the securities deal, diamond investments, and issued confirmations to investors, which repeated the deceptive information regarding the value of the diamonds that was originally attributed to the defendant. The Ninth Circuit found the last contention particularly important because the prospective investors allegedly relied on the description.

The bank defendant in *Levine* allowed its name to be used in such a fashion to lead investors to believe that the bank was serving as a trustee for the investors and made affirmative representations to investors who inquired. The *Levine* court stated that not only did plaintiffs state a cause of action for aiding and abetting based upon the bank's actual misrepresentations, but also stated a cause of action based upon the bank's silence or inaction because the

bank had a duty to disclose. *Levine*, 950 F.2d at n. 5.

■ In the present case, plaintiffs' complaint is devoid of the proper allegations against BOTT, Sovran, and Pettis to support aiding and abetting liability based upon actual misrepresentations. Thus, the complaint fails to properly allege that Pettis, BOTT, and Sovran gave substantial assistance. Not only are the allegations deficient, "it appears to a certainty that the plaintiff[s] can prove no set of facts in support of ... [their] claims that would entitle ... [them] to relief." *Gibson*, 781 F.2d at 1337.

■ An aiding and abetting violation may also be premised upon silence or inaction when the defendant possesses a duty to disclose. The mere possession of information does not invoke a duty to disclose. A duty to disclose may arise because of the presence of a fiduciary duty.

In addition, a duty to disclose may arise where the defendant knowingly assisted or participated in the fraudulent scheme, that is, where defendant consciously intends to further the principal violation. *Roberts*, 857 F.2d at 652–53 (duty to disclose may arise because reasonable to assume that accounting firm would not consent to the use of its name in materials the firm knew were fraudulent); *Levine*, 950 F.2d at 1485 n. 4–5 (allegations against Security Pacific sufficient to state duty to disclose because of Security Pacific's level of knowledge).[7]

Neither Pettis, Sovran, nor BOTT owed plaintiffs a fiduciary duty. Indeed, Pettis submits it had a duty to its client, Comp-Care, to not disclose information. With regard to the banks, based solely upon their roles as lenders, BOTT and Sovran did not have a duty to disclose. *Schneberger v. Wheeler*, 859 F.2d 1477, 1480 (11th

---

**6.** The court does not read or construe plaintiffs' complaint as alleging an aiding and abetting violation of § 10(b) and Rule 10b–5 against PBS. Plaintiffs' mere use of the words "aided and abetted," Second Amended Complaint (# 69), p. 20 para. 18, is insufficient. Fed. R.Civ.P. 9(b). The court expresses no opinion whether plaintiffs can successfully state primary or secondary violations against PBS.

**7.** Contrary to *DCD*, mere silence or inaction will not give rise to liability absent some duty to disclose. *Levine*, 950 F.2d at 1484 n. 4–6; *Brant v. CCG Fin. Corp.*, 693 F.Supp. 889, 894 (D.Or. 1988). In *DCD*, however, the plaintiffs were clients of the defendant attorneys and thus owed a fiduciary duty, which includes a duty to disclose.

Cir.1988), *cert. denied*, 490 U.S. 1091, 109 S.Ct. 2433, 104 L.Ed.2d 989 (1989).

For aiding and abetting liability based upon silence, absent a duty, the Ninth Circuit requires conscious intent to defraud, an exceptionally high standard. *Compare Levine* at 1484–85 n. 4–5. The complaint is devoid of any allegations that Sovran, BOTT, or Pettis consciously intended to further the alleged fraud, a necessary prerequisite for the invocation of a duty to disclose absent some fiduciary duty.

In conclusion, the aiding and abetting claims alleged against Sovran, BOTT, and Pettis are dismissed for failure to properly state a claim. "[I]t appears to a certainty that the plaintiff[s] can prove no set of facts in support of ... their claim[s] that would entitle ... [them] to relief." *Gibson*, 781 F.2d at 1337. As a result of dismissing the § 10(b) and Rule 10b–5 claim against BOTT, Sovran, and Pettis, this court has no personal jurisdiction over Sovran and BOTT.

*1933 Act Claims*

Section 11, 15 U.S.C. § 77k, provides

In case any part of the *registration statement* ... contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statement therein not misleading, *any person acquiring such security* ... may ... sue....

(emphasis added).

Section 12(2), 15 U.S.C. § 77*l*, provides

Any person who—

....

(2) *offers or sells* a security ... by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading ...

shall be liable to the *person purchasing* such security from him....

(emphasis added).

Section 15, 15 U.S.C. § 77*o*, provides

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, *controls any person liable under section 77k or 77l* of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable....

(emphasis added).

1. Initial Distribution

The purpose of the 1933 Act is to "regulate the *initial distribution* of securities from the issuer, as opposed to the purpose of the 1934 Act, to regulate subsequent trading on the secondary market." *Leonard v. Stuart–James Co.*, 742 F.Supp. 653, 658 (N.D.Ga.1990); *see also Blue Chip Stamps*, 421 U.S. at 752, 95 S.Ct. at 1933 ("The 1933 Act is a far narrower [than the 1934 Act] statute chiefly concerned with disclosure and fraud in connection with offerings of securities—primarily, as here, initial distributions of newly issued stock from corporate issuers.").

■ The legislative history indicates that the 1933 Act was "designed to 'affect[ ] only new offerings of securities.... [and] does not affect the ordinary redistribution of securities unless such redistribution takes on the characteristics of a new offering.' " *Mix v. E.F. Hutton & Co.*, 720 F.Supp. 8, 11 (D.D.C.1989) (quoting H.R.Rep. No. 85, 73d Cong., 1st Sess. 5 (1933)). *See also Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682 (3rd Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991); *Bank of Denver v. Southeastern Capital Group, Inc.*, 763 F.Supp. 1552, 1558–59 (D.Colo.1991); *Cox v. Eichler*, 765 F.Supp. 601, 609 (N.D.Cal. 1990).

While the court is cognizant of plaintiffs' assertion that the better reasoned view is contrary to the Third Circuit, but in accord with a district court in New York, *Farley v. Baird, Patrick & Co.*, 750 F.Supp. 1209, 1221 (S.D.N.Y.1990), the court declines to

extend the current rule and ignore the intention of Congress. *Cf. United States v. Naftalin,* 441 U.S. 768, 777–78, 99 S.Ct. 2077, 2084, 60 L.Ed.2d 624 (1979) ("Although it is true that the 1933 Act was primarily concerned with the regulation of new offerings, respondent's argument fails because the antifraud prohibition of § 17(a) was meant as a major departure from that limitation. *Unlike much of the rest of the Act,* it was intended to cover any fraudulent scheme in an offer or sale of securities, whether in the course of an initial distribution or in the course of ordinary market trading.") (emphasis added).

Had the merger been consummated, then perhaps plaintiffs could make these claims because the post-merger exchange of CompCare shares for FHC shares, debt instruments, and cash possibly would have been sufficiently like a new offering. However, as the situation existed in the present case, it was merely the purchase of shares of CompCare in anticipation of what was about to occur, but did not.

The circumstances of this case constituted subsequent trading and as such are not covered by the 1933 Act. Defendants' motions against claims 3, 4, and 5 are granted and these claims are dismissed.

2. "Sellers" under 12(2)—Claim 4 [8]

The core issue is whether defendants were "sellers" within the meaning of section 12(2). The premier cases are *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) (discussing section 12(1)) and *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531 (9th Cir.1989) (applying *Pinter* to section 12(2)).

> Under these definitions, the range of person potentially liable under § 12(1) is not limited to persons who pass title. The inclusion of the phrase "solicitation of an offer to buy" within the definition of

"offer" brings an individual who engages in solicitation, an activity not inherently confined to the actual owner, within the scope of § 12.

*Pinter,* 486 U.S. at 643, 108 S.Ct. at 2076.

However, because this was not an initial distribution, the court need not reach whether defendants were "sellers" within the meaning of § 12(2).

3. "Controlling Person" under 15

Liability under section 15 only arises when the controlled person is liable under the 1933 Act. 15 U.S.C. § 78t(a) (section 20 in the 1934 Act is the equivalent of section 15 in the 1933 Act) [9]; *Buhler v. Audio Leasing Corp.,* 807 F.2d 833, 835 (9th Cir. 1987) (must allege actual power or influence and defendant is a culpable participant in the alleged illegal activity). Because no defendant is liable under § 11 or § 12(2), there can be no liability under § 15.

*Oregon Securities Claims*

O.R.S. 59.115 provides, in relevant part:
(1) A person who sells a security is liable ... to a purchaser of the security if the person:

> ....

> (b) Sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading....

> ....

> (3) Every person who directly or indirectly controls a seller liable under subsection (1) of this section, every partner, officer, or director of such seller, every person occupying a similar status or performing similar functions, and every person who participates or materially aids in the sale is also liable jointly and severally

---

**8.** The "sellers" under section 11 are spelled out in the statute while the sellers under section 12 are not and thus the court must turn to case law.

**9.** Title 15 U.S.C. § 78t(a), section 20(a), provides [e]very person who ... controls any person liable under any provision of this chapter ...

shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

with and to the same extent as the seller. . . .

The dispute in this claim is who was a seller? *Nesbit v. McNeil*, 896 F.2d 380, 387 (9th Cir.1990) (O.R.S. 59.115 only applies to buyer-seller relationship); *Rolex Employees Retirement Trust v. Mentor Graphics Corp.*, [1991 Transfer Binder] Fed.Sec. L.Rep. (CCH) para. 96,053 at 90,313 (D.Or. 1991).

■ While Oregon securities law should be construed analogously to the federal law, section 12 of the 1933 Act, *Poole v. Frank*, [1990–91 Transfer Binder] Fed.Sec. L.Rep. (CCH) para. 95,751 at 98,625 (D.Or. 1990); *Everts v. Holtmann*, 64 Or.App. 145, 151, 667 P.2d 1028, 1032, *rev. denied*, 296 Or. 120, 672 P.2d 1193 (1983), the language of O.R.S. 59.115(1)(b) differs significantly from § 12(2). Unlike § 12, O.R.S. 59.115 only refers to sellers, not also to offerors. Therefore, O.R.S. only refers to persons who pass title. *See Rolex, supra.*

■ Plaintiffs conceded at oral argument that none of the defendants passed title to plaintiffs. Accordingly, claim 6 is dismissed.

"Seller" liability is a prerequisite to liability under (3). *Metal Tech Corp. v. Metal Teckniques Co.*, 74 Or.App. 297, 306, 703 P.2d 237, 244 (1985) (O.R.S. 59.115(3) provides that the named persons are liable "to the same extent as the seller"). As there is no "seller" liability, claim 7 must also be dismissed.

## RICO

Plaintiffs contend they have alleged two types of RICO claims, although the court notes that the complaint is less than clear: that PBS, FHC, Dozoretz, and Pettis participated directly and indirectly in FHC–CompCare, the alleged enterprise, 18 U.S.C. § 1962(c) [10]; and that PBS received and used proceeds derived from racketeering activity, with the enterprise being PBS. 18 U.S.C. § 1962(a).[11]

*Requisite Pattern*

■ At least two acts are required, but two acts may not be sufficient. *Sedima v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). The requisite pattern is satisfied with continuity plus relationship, not acts in isolation.

Defendants submit that plaintiffs' RICO claims rest upon a single merger transaction and thus the "threat of continued criminal activity" required by *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), is missing. Under *H.J.*, to prove a pattern a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J.*, 492 U.S. at 239, 109 S.Ct. at 2900. "[T]he threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J.*, 492 U.S. at 242, 109 S.Ct. at 2902.

With regard to the 1962(a) claim, plaintiffs submit that PBS's method of conducting business in the investment banking industry is a requisite pattern and satisfies the threat of continued criminal activity requirement.[12] With regard to the 1962(c) claim, the court is unsure what allegations plaintiffs submit of a requisite pattern.

■ The basis of the section 1962(c) claim simply does not satisfy the pattern

---

**10.** Title 18 U.S.C. § 1962(c) provides "[i]t shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity."

**11.** Title 18 U.S.C. § 1962(a) provides "[i]t shall be unlawful for any person who has received any income derived . . . from a pattern of racketeering activity . . . to use or invest . . . any part of such income, or the proceeds of such income,

in acquisition of any interest in, or the establishment or operation of, any enterprise."

**12.** PBS was retained by CompCare to seek out a merger partner and to render a fairness opinion about the proposed merger. Plaintiffs claim that PBS intentionally made misrepresentations, including misrepresentations about financing, to keep the stock price inflated, to ensure PBS's receipt of an enormous fee. Plaintiffs submit this is PBS's regular method of conducting business.

requirement. All plaintiffs can point to is the single act of the failed merger transaction. While the court is cognizant that plaintiffs presumably argue that within the failed merger, the named defendants engaged in a number of predicate acts, which were related and which continued, the court disagrees. Beyond doubt, the failed merger was an isolated event, and there is no future threat of future alleged criminal activity.

"[I]t appears to a certainty that the plaintiff[s] can prove no set of facts in support of ... [their 1962(c)] claim that would entitle ... [them] to relief." *Gibson,* 781 F.2d at 1337. The 1962(c) claim is dismissed.

The 1962(a) claim, solely against PBS, is also dismissed, but without prejudice. Although the court is extremely skeptical of plaintiffs' probability of success, the court allows plaintiffs to replead this claim, but only with extreme particularity.

ORICO

O.R.S. 166.720 provides, in relevant part:

(1) It is unlawful for any person who has knowingly received any proceeds derived ... from a pattern of racketeering activity ... to use or invest ... any part of the proceeds, or the proceeds derived from the investment or use thereof, in the ... operation of any enterprise.

....

(3) It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate ... in such enterprise through a pattern of racketeering activity....

■ For claims pled under ORICO, plaintiffs must plead actual damages. *Riddle v. Eugene Lodge,* 95 Or.App. 206, 768 P.2d 917 (1989).

■ Like the federal counterpart, plaintiff need not establish a conviction to satisfy the racketeering activity requirement, but unlike the federal law, continuity is not required under ORICO. *Computer Concepts, Inc. v. Brandt,* 310 Or. 706, 721, 801 P.2d 800, 809 (1990).

■ Once again, notwithstanding the evident pleading deficiencies, the ORICO

claim alleged with FHC–CompCare as the enterprise must fail. The predicate acts alleged are not related; the failed merger was an isolated incident. "[I]t appears to a certainty that the plaintiff[s] can prove no set of facts in support of ... [their] claim that would entitle ... [them] to relief." *Gibson,* 781 F.2d at 1337.

The ORICO claim alleged solely against PBS may be realleged, although it is dismissed for failure to sufficiently plead.

*Fraud*

■ Plaintiffs conclusory fraud allegations are insufficient: while plaintiffs use the correct buzz words, plaintiffs refer generically to "defendants." Fraud must be alleged with particularity. Fed.R.Civ.P. 9(b). For failure to comply with Fed.R.Civ.P. 9(b), plaintiffs' fraud claim is dismissed, but plaintiffs are granted leave to amend.

*Fiduciary Duty*

■ There is absolutely no fiduciary duty here at all, except the duty owed to CompCare, which plaintiffs cannot assert except in a derivative suit. Furthermore, *Himler* rejected these claims as derivative, as belonging to the corporation. This court agrees. The court is absolutely certain that plaintiffs can show no set of facts which would entitle them to prevail on these fiduciary duty claims.

*Negligence*

■ Negligence and gross negligence are not recoverable when only economic harm is alleged without some duty. *Hale v. Groce,* 304 Or. 281, 284, 744 P.2d 1289, 1290 (1987).

Recognizing their fatal problems, plaintiffs change the focus: now plaintiffs discuss a claim for negligent misrepresentation, apparently abandoning the straight negligence claims. *Onita Pac. Corp. v. Trustees of Bronson,* 104 Or.App. 696, 803 P.2d 756 (1990), *rev. allowed,* 311 Or. 349, 811 P.2d 144 (1991). "[L]iability for the tort should be limited to cases where 'the relationship of the plaintiffs to the defendants is sufficiently close to permit recov-

ery of economic loss.'" *Onita*, 104 Or. App. at 707, 803 P.2d 756 (quoting *Duyck, infra* ); *cf. Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or. 151, 742 P.2d 1176 (1987) (declining to recognize the tort of negligent misrepresentation, but stating that if such a tort existed there must be a sufficiently close relationship to permit recovery).

To hold any, if not all, of the defendants liable for the tort of negligent misrepresentation would render the requirement of a sufficiently close relationship meaningless. However, the court will allow plaintiffs to allege a claim for negligent misrepresentation, but the claim must specifically be alleged. This claim, however, may not be realleged against Sovran and BOTT because beyond doubt plaintiffs can prove no set of facts in support of their claim. In any event, this court does not possess personal jurisdiction over BOTT and Sovran.

*Punitives*

On this motion to dismiss, the court declines to strike plaintiffs' request for punitives, to the extent that any of plaintiffs' tort claims remain.

*Summary*

The court dismisses plaintiffs' entire complaint, but allows them to replead certain claims. To the extent this court allows plaintiffs to amend their complaint, the court does not want another 65 page complaint. Plaintiffs are ordered to omit all the 46 pages of introduction and to get directly to each claim. Plaintiffs are ordered to allege each element of each claim against each defendant by name specifically. Simply alleging "defendants" is not sufficient. This is the last attempt plaintiffs will have to file an amended complaint.

Plaintiffs are granted leave to file an amended complaint as follows:

1. Claims 1 and 2 to the extent that plaintiffs purchased stock in reliance upon the alleged misrepresentations, but not against Sovran, BOTT, and Pettis;

2. Claims 8 and 9, but only against PBS;

3. Claim 10, but plaintiffs must state the claim with exacting particularity; and

4. Claims 11 and 12, but not against Sovran and BOTT.

*Conclusion*

PBS's motion to dismiss (# 83) is GRANTED. Sovran Bank's motion to dismiss for lack of jurisdiction (# 85) is GRANTED. Sovran Bank's motion to dismiss for failure to state a claim (# 87) is GRANTED. CompCare's motion to dismiss (# 89) is GRANTED. BOTT's motion to dismiss for lack of jurisdiction (# 92) is GRANTED. BOTT's motion to dismiss for failure to state a claim (# 93) is GRANTED. Dozoretz's motion to dismiss (# 95) is GRANTED. Pettis's motion to dismiss (# 97) is GRANTED.

Plaintiffs' complaint is DISMISSED. Plaintiffs have thirty (30) days to file an amended complaint in accordance with this court's opinion and order.